IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NATIONAL CHENG KUNG UNIVERSITY | § § § § § § § | |
| v. | | Case No. 2:13-CV-442- MHS-RSP |
| INTEL CORPORATION | | |

## **MEMORANDUM ORDER**

Before the Court is Intel Corporation's ("Intel") Motion to Transfer Venue to the Northern District of California (Dkt. 24, filed August 30, 2013). Intel argues that the Northern District of California is a clearly more convenient forum for this case. Plaintiff National Cheng Kung University ("NCKU") opposes transfer. After considering all of the record evidence and weighing the various factors, the Court finds that Intel has failed to carry its burden of showing that the Northern District of California is a clearly more convenient venue for this case.

## **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff National Cheng Kung University ("NCKU") is a higher education institution with a principal address in Taiwan. (Dkt. 1). On May 31, 2013, NCKU filed this suit against Intel Corporation ("Intel"), a Delaware corporation organized and existing under the laws of the State of Delaware with its principal place of business in Santa Clara, California. (Dkt. 1, 44). On May 27, 2014, NCKU filed an amended complaint accusing Intel of infringing U.S. Patent No. 5,636,152 ("the '152 Patent) and U.S. Patent No. 5,825,420 ("the '420 Patent"). (Dkt. 32). Intel now moves the Court pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Northern District of California. (Dkt. 24).

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly

more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

**A.     Proper Venue**

Neither party disputes that venue is proper either in the Eastern District of Texas or the Northern District of California as to NCKU and Intel.

**B.     Private Interest Factors**

### 1.     Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* Wright & Miller, *Federal Practice and Procedure* § 3851. "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key

more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

**A.     Proper Venue**

Neither party disputes that venue is proper either in the Eastern District of Texas or the Northern District of California as to NCKU and Intel.

**B.     Private Interest Factors**

### 1.     Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* Wright & Miller, *Federal Practice and Procedure* § 3851. "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key

witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343–44.

Intel's motion sets forth a series of statements alleging the convenience prong weighs strongly in favor of transfer. However, it is clear the statements in Intel's motion place heavy emphasis on its own witnesses without setting forth a thorough analysis of NCKU and third-party witnesses. For example, Intel represents its marketing and sales witnesses are located in the Northern District of California. (Mot. at 1). Intel, however, fails to articulate the importance of these particular witnesses in its motion. Moreover, Intel identifies its research and development witnesses as being located in the Eastern District of California and the District of Oregon. (*Id.*) This factor weighs in Intel's favor. However, with regard to NCKU's witnesses and potential Taiwan-based third-party witnesses, Intel argues the Northern District is "a more convenient travel destination for NCKU's own witnesses, both because Taiwan is closer to San Francisco than to Marshall and because NCKU's witnesses can take direct commercial flights from Taiwan to San Francisco (but not to Marshall)." (Mot. at 11). Yet, in the very same paragraph, Intel summarily discounts NCKU's Washington D.C.-based prosecuting attorney as a factor because "he would have to travel a significant distance regardless of which venue is chosen . . . ." (Mot. at 12). Movant cannot have it both ways. If NCKU's witnesses are based in Taiwan as Intel suggests, these witnesses, too, would be required to travel internationally at great distances regardless of venue.

Similarly, neither party sets forth a compelling argument for or against transfer based on third-party witnesses. For example, NCKU identifies what it perceives to be relevant party and third-party witnesses who reside closer to the Eastern District of Texas than the Northern District

of California, although it is not clear how important these witnesses will be to this case.[1] For its part, Intel identifies potential third-party witnesses including an inventor of a prior art patent and prior art sources Oracle and Zoran. However, Intel's need to rely on these witnesses to supplement the prior art patents is highly speculative[2] and it ignores the fact that the underlying patent instruments—evidence that is most commonly relied upon in an invalidity defense—are equally available in either district. Nevertheless, even if Intel were to rely on third-party witnesses from these entities to supplement the prior art teachings, Intel's briefs and declarations fail to disclose the various Texas-based locations of these two entities. Accordingly, taken as a whole, this factor only weighs slightly in favor of transfer.

### 2. Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Intel's Motion states that it "is not aware of any documents or witnesses located in the Eastern District of Texas that could provide relevant information." (Mot. at 4). Moreover, Intel states "[m]ost of the relevant Intel documents pertaining to the research, design, and development of the accused products and virtually all of the relevant documents relating to the

---

[1] For example, NCKU identifies Hewlett Packard as a potential third-party witness to this case that resides in this district. However, the necessity of this entity as a third-party witness appears to be speculative, at best. (Resp. at 3).

[2] *See* (Mot. at 6) ("Oracle and Zoran *may* have additional information regarding the identified prior art patents, other relevant documents relating to those patents, and/or products incorporating those patents.") (emphasis added).

accused products' marketing, sales, and other financial data are located in Santa Clara, California, Folsom, California and Hillsboro Oregon." (Mot. at 4).

Despite its contention that "virtually all" the relevant documents are located in California and Oregon, Intel does not appear to refute that these documents are additionally stored in its Dallas and Austin offices (located in the Northern, and Western Districts of Texas, respectively). *See* (Papworth Decl. ¶ 9, Dkt. 24-1) ("[B]ased on my knowledge and research to date, [Intel's Texas-based sales offices] do not possess any sales information relevant to this case that is *not also maintained centrally on Intel servers* in California and Oregon.") (emphasis added). Thus, based on Intel's own arguments and declarations, it appears that all of its relevant documents are located in close proximity to *both* districts in question. Accordingly, this factor is neutral.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a). Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

The witnesses Intel identifies include various prior art sources, UMC as a former co-assignee of the '152 Patent, and the named inventors of the '152 Patent. NCKU identifies Hewlett Packard, as Intel's customer, and the prosecuting attorney of the '152 Patent. Neither this court nor the Northern District of California possess subpoena power over the Washington, D.C.-based

prosecuting attorney. Moreover, to the extent third-party witnesses from Hewlett Packard are necessary, this Court does, indeed, possess the availability of compulsory process as to this entity. This fact weighs against transfer.

Turning now to third-party witnesses Intel identifies, with regard to the inventors of the '152 Patent, Intel's own arguments and declarations appear to support a conclusion that these inventors are not subject to compulsory process of the Northern District of California. *See* (Strickland Decl. ¶ 2, Dkt. 24-2) ("I am not aware of any information indicating that any of the named inventors of U.S. Patent No. 5,636,152 . . . lives outside Taiwan."). With regard to UMC, the importance of this third-party witness appears to be marginal, at best, based on Intel's own identification of this entity as a former assignee of the patent. (Mot. at 10). Specifically, much of the information UMC can provide regarding the assignment of '152 Patent would be largely duplicative of information retained by the named inventors and NCKU, all of whom appear to be the only other individuals and entities privy to the assignments of the '152 Patent. Finally, with regard to the prior art sources, it appears some of the witnesses Intel identifies are indeed subject to compulsory process of the Northern District of California. As Intel correctly concludes, this weighs in favor of transfer. However, Intel's intent to rely on these witnesses—at trial—to supplement the underlying prior art is speculative at best and it ignores the various Texas-based locations of these identified entities[3] that *are* subject to the compulsory process of this Court.

Accordingly, evaluated as a whole, this factor only weighs slightly in favor of transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Although Intel presents arguments to suggest that transfer would neither adversely affect the parties' efforts expended thus far, nor judicial economy, Intel fails to present the Court with

---

[3] *See supra* Part B.1.

any evidence supporting a theory as to why transfer to the Northern District of California would make trial of the instant suit easier, expeditious, or inexpensive.[4] Indeed, Intel's own arguments appear to suggest that this factor is, at best, neutral. *See* (Mot. at 12) (arguing judicial efficiency would not be lost and the parties' efforts would not be wasted). Accordingly, the Court finds this factor neutral.

C.   **Public Interest Factors**

   1.   **Local Interest in Having Localized Interests Decided at Home**

Intel argues the Northern District of California has a local interest in this case because, among other things, "Intel is headquartered in that District . . . ." (Mot. at 14.). To the extent Intel's position is staked upon a connection not to "the events that gave rise to this suit," as suggested by *In re Volkswagen II*, but rather a connection of some residents of the Northern District of California, financial or otherwise, to Intel itself, the Court notes that this raises troubling fairness implications and affords it little weight. 545 F.3d at 318. Indeed, while the concentration of Intel's corporate activities may take place in or near the Northern District of California, Intel has a significant commercial presence across the country and in this District.

Intel further argues its "design and development work for the accused products took place in California," because such activities are relevant to a connection to significant events that gave rise to this suit. (Mot. at 14). However, Intel's own evidence regarding its manufacturing facilities belies its contention that there exists a strong local interest in the Northern District of California. For example, the Papworth Declaration accompanying Intel's motion sets forth several Intel locations outside of California—and others outside the United States—responsible

---

[4] Although the Court acknowledges Intel's discussion regarding the proximity of the witnesses and sources of proof to the Northern District of California, such arguments have been specifically addressed above. *See supra* Parts B.1 and B.2.

for the manufacturing of the accused semiconductor products. *See* (Papworth Decl. ¶ 10, Dkt. 24-1) ("The accused semiconductor products are manufactured primarily in Oregon, Arizona, New Mexico, Israel, and Ireland, and are offered for sale by Intel throughout the United States."). This geographical scattering of Intel's primary manufacturing locations of accused semiconductor products—some of which being situated closer to this district than the transferee district—weighs against transfer. Accordingly, the court is persuaded that this factor is neutral.

    **2.**    **Familiarity of the Forum With the Law that Will Govern the Case, Administrative Difficulties Flowing From Court Congestion, and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

The Court finds that the remaining public interest factors are neutral. Indeed, Intel itself explicitly and unequivocally concedes that the remaining three factors are neutral. (Mot. at 13).

**CONCLUSION**

A motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the evidence as a whole, the Court finds that this is not such a situation. Only two factors—the cost of attendance for willing witnesses and the availability of compulsory process to secure the attendance of witnesses—weigh slightly in favor of transfer. The remaining factors, including all four public interest factors, are neutral. On balance, Intel has fallen short of meeting its burden to show that the Northern District of California would be a clearly more convenient forum than the Eastern District of Texas. Accordingly, Intel's Motion to Transfer Venue (Dkt. No. 24) is **DENIED**.

**SIGNED this 26th day of September, 2014.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE